UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| AMANDA LEA SEXTON,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF CLARK NEVADA, *et al.*,<br><br>Defendants. | Case No. 2:16-cv-02289-RFB-VCF<br><br>**ORDER**<br><br>Motion to Add Assisting Inmate to Transaction List (ECF No. 46)<br>Motion for Order Allowing Correspondence (ECF No. 47)<br>Motion to Dismiss (ECF No. 62)<br>Motion to Dismiss (ECF No. 64)<br>Motion to Extend Time (ECF No. 70) |

**I. INTRODUCTION**

Before the Court are Plaintiff Amanda Lea Sexton's ("Sexton") three motions: (1) Motion to Add Assisting Inmate to Transaction List, ECF No. 46; (2) Motion for Order Allowing Correspondence Between Plaintiff and Toney White, ECF No. 47; and (3) Motion to Extend Time to Respond to Defendants' Motion to Dismiss, ECF No. 70.

Also before the Court are two motions to dismiss. Defendants J. Chavez ("Chavez"), R. Robinson ("Robinson"), Ryan Adams ("Adams"), Anthony Niswonger ("Niswonger"), and City of Henderson Police Department ("HPD") (collectively, "Henderson Defendants") bring a Motion to Dismiss. ECF No. 62. Defendants Las Vegas Metropolitan Police Department ("LVMPD"), Sheriff Joseph Lombardo ("Lombardo"), Officer Franc Cadet ("Cadet"), and Officer Charles Yannis ("Yannis") (collectively, "Las Vegas Defendants") also bring a Motion to Dismiss. ECF No. 64.

**II. FACTUAL BACKGROUND**

In this civil rights matter, Sexton sues several individuals and entities for constitutional and

statutory violations occurring during Sexton's arrest and her pretrial detainment. ECF No. 6. [1]

Prior to her arrest, Sexton was involved in a car accident that left her with chronic pain. <u>Id.</u> at 4. She suffered from head, spine, and neck injuries, dual spine fractures, chronic headaches, and mental health illnesses such as post-traumatic stress disorder ("PTSD"), anxiety, and depression. <u>Id.</u> Sexton was receiving medical treatment for her chronic pain between September 3, 2015, and January 22, 2016. <u>Id.</u> Her head trauma also caused her to develop blurred vision. <u>Id.</u> As a result, Sexton was prescribed prescription glasses. <u>Id.</u> When she attempted to read or write without her glasses, she experienced severe headaches. <u>Id.</u>

Sexton was arrested by Clark County of Nevada ("COCN"), City of Henderson, Nevada ("COHN"), City of Henderson Police Department ("HPD"), City of Las Vegas ("CLV"), and Las Vegas Metropolitan Police Department ("LVMPD") on January 22, 2016. <u>Id.</u> at 5. Sexton complied with arresting officers during her arrest. <u>Id.</u> But despite her compliance, Yannis injured Sexton by slamming her against the concrete ground and jumping on top of her. <u>Id.</u> Lombardo was later informed about the force Yannis employed when Sexton requested an investigation, but he failed to reply to her complaint. <u>Id.</u> at 10. After Yannis made the arrest, Sexton was transported to Henderson Detention Center ("HDC"). <u>Id.</u> at 5.

During the admission process into HDC, Sexton underwent medical screening by Henderson Detention Center Medical Administration ("HDCMA"). <u>Id.</u> She shared her medical conditions and current prescriptions with HDCMA, including her car accident injuries. <u>Id.</u> at 6. She also provided a list of her known prescriptions, *e.g.* Loratab and Percocet, and included a list of her prescribing pharmacies. <u>Id.</u> As to her current medical conditions, Sexton specifically informed HDCMA about her drug and nicotine withdrawals, PTSD, severe injuries to her head, neck, and back injuries, and chronic pain. <u>Id.</u> at 5. She described her pain as debilitating. <u>Id.</u> She also told HDCMA about her prescription eye glasses and stated that her fractured spine would require her to use a lower bunk while detained. <u>Id.</u>

Sexton believes HDCMA prescribes medication to detainees that can be verified as a

---

[1] The Court takes the following facts from Sexton's Amended Complaint (ECF No. 6) for purposes of this motion to dismiss.

prescription for a legitimate medical need. Id. at 6. HDCMA refused to prescribe Sexton her medications based on a "no narcotic policy" implemented by COCN, HDCMA, and Moers. Id.

During her time at HDC, Sexton never engaged in conduct warranting discipline. Id. But Chavez and Robinson placed Sexton in punitive segregation after the admission process for twelve days at the request of Adams and Niswonger. Id. She was not afforded any notice or opportunity to challenge her punitive segregation. Id. at 7. She remained in punitive segregation until February 3, 2016. Id.

Five days after Sexton was booked into HDC, Niswonger and Adams interviewed Sexton. Id. Sexton requested her prescription glasses during the interview, explaining that her head trauma caused blurred vision, strained eyes, and excruciating headaches. Id. Niswonger and Adams laughed at Sexton's request and stated they would help her only if she helped them. Id.

Sexton continued to complain about her medical needs while at HDC. Id. HDCMA provided Sexton with only Ibuprofen despite her continual complaints of debilitating pain. Id.

Sexton was transferred to Clark County Detention Center ("CCDC") on February 3, 2016. Id. When being processed into CCDC, she reiterated her need for prescription glasses, pain management, and a lower bunk to Naphcare staff ("Naphcare"). Id. Naphcare issued Ibuprofen to Sexton based on CCDC's "no narcotic policy." Id. Naphcare continued to insist on treatments that were known to be ineffective for Sexton. Id. at 8.

Although Defendants were aware of Sexton's medical conditions and injuries, she was assigned to a hard cell. Id. The hard cell contained a concrete slab and hard wood benches. Id. It lacked bedding and a mattress. Id. She was assigned to the hard cell based on a policy approved by, in part, LVMPD and Lombardo. Id. She remained in the cell for three days. Id. The cell conditions exacerbated her head, spine, and neck pain. Id.

Based on the hard cell conditions and the inadequate medical treatment, Sexton requested the necessary tools to complete a grievance. Id. at 9. An unknown officer responded "wait until you get upstairs." Id.

Sexton was moved to North Valley Detention Center ("NVDC") on February 6, 2016. Id. She has been assigned an upper bunk sporadically. Id. At least one Defendant told her that "inmates

cannot choose their housing as housing is based on the needs of the facility." Id. She formally and informally made multiple Defendants, including LVMPD, aware of the risks she faced from an upper-bunk assignment. Id.

On May 14, 2016, Cadet confronted Sexton about legal materials filed and submitted for copies for this case. Id. Cadet told Sexton that filing a lawsuit was "just gonna make a bad situation worse." Id.

On September 24, 2016, Sexton was placed in "hole" as punishment for filing this suit. Id. Defendants justified the placement through fabricated or exaggerated charges of rule violations. Id. Defendants continue to engage in a harassment campaign to discourage Sexton from continuing this action. Id.

Throughout her time in custody, Sexton has filed multiple grievances. Id. at 11. Many have gone unanswered or have been destroyed. Id. She continues to experience pain because she has not been treated for pain management or given her prescriptions. Id. The lack of treatment stems from the policies and practices adopted or ratified by COCN, COHN, HPD, Lombardo, Moers, Williamson, HDCMA, Cadet, Naphcare, CLV, and LVMD. Id. at 12–14. Sexton believes the policies serve no purpose. Id. at 13–14.

### III. PROCEDURAL BACKGROUND

Sexton originally asserted in her claims together with those of Toney White ("White"). White v. Clark County of Nevada et al., 2:16-cv-00734-RFB-VCF (D. Nev. filed April 1, 2016). On September 29, 2016, the Court severed the claims. Id. at ECF No. 31. Sexton then filed her Amended Complaint against Defendants in November 2016, in which she alleges claims under 42 U.S.C. § 1983 ("Section 1983"), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act ("RA"), 29 U.S.C. § 794. ECF No. 6. After the Amended Complaint was screened, the following claims remained:[2]

(1) violation of the First Amendment for retaliation against Cadet;

---

[2] Certain claims also remained against other Defendants who are not part of Henderson Defendants or Las Vegas Defendants subsets, *e.g.* Defendants Naphcare, Williamson, HDCMA, COCN, COH, Moers, CLV, HDCMA, Gregg, and Ashley. *See* ECF No. 43.

(2) violation of the First Amendment for inmate mail claim against Lombardo;

(3) violation of the Fourteenth Amendment Due Process Clause for placing Sexton in punitive segregation without notice or an opportunity to challenge the placement against Chavez, Robinson, Adams, and Niswonger;

(4) violation of the Due Process Clause for deliberate indifference to a serious medical need against Adams, Niswonger, HPD, Lombardo, and LVMPD;[3]

(5) violation of the Fourteenth Amendment Due Process Clause for a policy allowing injured inmates to be placed in a hard cell against LVMPD and Lombardo;

(6) violation of the Fourth Amendment for the use of excessive force during the arrest against Yannis, LVMPD, and Lombardo; and,

(7) violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") against Lombardo, LVMPD, and HPD.

ECF No. 43.

Five pending motions have been brought since the screening of the Amended Complaint. Sexton moves to add assisting inmate to the transaction list and for an order allowing correspondence with White. ECF Nos. 46, 47. Henderson Defendants and Las Vegas Defendants move separately to dismiss the complaint. ECF Nos. 62, 64. Sexton initially filed a notice of non-opposition to Henderson Defendants' motion to dismiss. ECF No. 68. But she later moved for an extension of time to respond to the motion. ECF No. 70. She then opposed the motion. ECF No. 86. She also opposed Las Vegas Defendants' motion. ECF No. 85. Both sets of Defendants replied. ECF Nos. 88, 89. The matter was then stayed pending a decision on the motions to dismiss. ECF No. 98.

**IV.  LEGAL STANDARD**

In order to state a claim upon which relief can be granted, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

---

[3] Because the alleged conduct occurred while Sexton was a pretrial detainee, her medical claims are analyzed under the Fourteenth Amendment Due Process Clause. Gordon v. Cty. of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018).

- 5 -

8(a)(2).

In ruling on a motion to dismiss for failure to state a claim, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Security Servs., Inc., 706 F.3d 1017, 1019 (9th Cir. 2013).

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).

In addition, documents filed by a plaintiff who is proceeding without counsel must be liberally construed, and a *pro se* complaint must be "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)) (citations and internal quotation marks omitted); see also Butler v. Long, 752 F.3d 1177, 1180 (9th Cir. 2014).

**V. DISCUSSION**

The Court first resolves Sexton's three pending motions. It then turns to the two motions to dismiss.

**A. Sexton's Motions**

To begin, the Court grants *nunc pro tunc* Sexton's request for an extension of time to respond to Henderson Defendants' motion to dismiss. Sexton sought an extension based on her unfamiliarity with the law as a *pro se* defendant. Defendants did not oppose the motion. The Court will therefore consider her opposition when resolving the motion to dismiss.

As to Sexton's remaining two motions, Sexton moves to add the assisting inmate to the transaction list and for an order allowing correspondence with White. The Court finds no basis in the law to grant the relief sought and denies the motions accordingly.

**B. Defendants' Motions to Dismiss**

The Court now turns to Defendants' motions to dismiss. The Court first addresses whether

HPD may be sued under Nevada law. The Court then discusses whether all claims against Henderson Defendants must be dismissed for insufficiently alleging punitive purpose or intent. The Court then resolves each set of Defendants' arguments as they pertain to individual claims.

### 1. Capacity of HPD

The Court first considers Henderson Defendants' argument that HDP lacks the capacity to be sued under FRCP 17(b).

#### *i. Legal Standard*

FRCP 17(b) provides that for parties other than individuals or corporations, the capacity to sue or be sued is determined by state law. Fed. R. Civ. P. 17(b)(3). The Nevada Supreme Court has held that "a department of the municipal government may not, in the department name, sue or be sued" without statutory authorization. Wayment v. Holmes, 112 Nev. 232, 237–38, 912 P.2d 816, 819 (1996) (dismissing Washoe County District Attorney's Office, holding it was a department of the municipal government rather than a political subdivision).

#### *ii. Discussion*

HPD is not a proper party under Nevada law. COHN is instead the proper party to sue when challenging HPD conduct. Because Sexton names both HPD and COHN as Defendants, the Court construes her claims against HPD as claims against COHN. The Court dismisses HPD from this matter accordingly.

### 2. Punitive Intent of Henderson Defendants

In addition to summarily dismissing HDP, Henderson Defendants argue for the summarily dismissal of the remaining Henderson Defendants.

#### *i. Legal Standard*

A pretrial detainee's right to be free from punishment is grounded in the Due Process Clause, but courts borrow from Eighth Amendment jurisprudence when analyzing the rights of pretrial detainees. See Pierce v. Cnty. of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008). The Ninth Circuit has held that a pretrial detainee may not be subjected to disciplinary segregation without a due process hearing. Mitchell v. Dupnik, 75 F.3d 517, 524 (9th Cir. 1996).

#### *ii. Discussion*

1    Henderson Defendants move to be dismissed from this matter, arguing Sexton failed to allege they acted with the punitive purpose or intent necessary to her pretrial detainee claims. The Court disagrees. Sexton alleges that Chavez and Robinson placed her into punitive segregation at the request of Adams and Niswonger even though she had not engage in any conduct meriting discipline. She further alleges that she never received notice of any misconduct or an opportunity to challenge the punitive segregation. Because Sexton was allegedly placed in a disciplinary segregation without due process as a pretrial detainee, the Court finds she sufficiently alleges that Henderson Defendants acted with punitive purpose or intent.

### 3. Section 1983 Claims

The Court now turns to Sexton's claims asserted under Section 1983. For a plaintiff to assert a violation Section 1983 by state actors, she must establish an underlying constitutional violation. "Section 1983 does not create substantive rights but merely is a device for enforcing certain constitutional provisions or federal statutes." See Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617 (1979). The elements of a Section 1983 claim are: (1) violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a "person" (4) acting "under color of state law." Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991).

Local governments can be held liable under Section 1983 for deprivations of federal rights only if the violation is caused by action taken pursuant to official municipal policy or custom; municipalities may not be held liable under a theory of *respondeat superior*. Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 690 (1978). There are four ways to establish municipal liability: 1) official decision by policymaking body (Monell); 2) action by one with final policymaking authority (Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986)); 3) failure to train (City of Canton v. Harris, 489 U.S. 378, 388 (1989); and 4) custom (Gillete v. Delmore, 979 F.2d 1342, 1348 (9th Cir. 1992))."When an individual sues a local government for violation of a constitutional right, the municipality is liable if the individual can establish that the local government 'had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation he suffered.'" Galen v. County of L.A., 477 F.3d 652, 667 (9th Cir.2007)

(quoting Monell, 436 U.S. at 694–95). To allege municipal liability under Monell, a plaintiff must provide more than a bare allegation that a policy exists. AE ex rel. Hernandez v. Cty. of Tulare, 666 F.3d 631, 637 (9th Cir. 2012).

### i. Claim One: First Amendment Retaliation and Inmate Mail

Claim One pertains only to Las Vegas Defendants. In Claim One, Sexton alleges a First Amendment retaliation claim against Cadet and an inmate mail claim against Lombardo.

#### a. Retaliation Claim - Legal Standard

Sexton first alleges a First Amendment retaliation claim against Cadet. To assert a retaliation, claim under the First Amendment in the prison context, a plaintiff must allege five elements: "(1) an assertion that a state actor took some adverse action against an inmate, (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Shepard v. Quillen, 840 F.3d 686, 695 (9th Cir. 2016).

#### b. Retaliation Claim - Discussion

Sexton alleges Cadet retaliated against her for pursuing this matter, stating she was "just gonna make a bad situation worse." Sexton was then harassed and placed in the "hole" four months later. Las Vegas Defendants move to dismiss the retaliation claim based the lack of temporal proximity between Sexton's complaint, Cadet's comment, and the alleged retaliation. While temporal proximity may be considered in resolving a First Amendment retaliation claim, Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995), the Court accepts Sexton's well-pleaded allegations as true at the motion to dismiss stage. Because Sexton alleges that Cadet harassed her and placed her in the "hole" for pursuing this litigation, the Court denies Las Vegas Defendants' motion to dismiss as to the First Amendment retaliation claim.

#### c. Inmate Mail Claim - Legal Standard

Sexton next brings an inmate mail claim against Lombardo. Generally, prisoners have a First Amendment right to send and receive mail. Witherow v. Paff, 52 F.3d 264 (9th Cir. 1995). But "a prison may adopt regulations which impinge on an inmate's constitutional rights if those regulations are 'reasonably related to legitimate penological interests.'" Id. (quoting Turner v.

Safley, 482 U.S. 78, 89 (1987)). "Legitimate penological interests include security, order, and rehabilitation." Id.; see also Turner, 482 U.S. at 93 (holding limitation on inmate-to-inmate correspondence was reasonably related to the valid goals of institutional security and safety).

#### d. Inmate Mail Claim - Discussion

Sexton challenges an alleged policy that prohibits mail inmate-to-inmate correspondence. Las Vegas Defendants argue the alleged policy is constitutional because it is reasonably related to legitimate penological interests of preventing criminal activity and promoting safety. Because the alleged policy reasonably relates to legitimate penological interests identified in Turner, the Court dismisses Sexton's mail claim accordingly.

### ii. Claim Two: Punitive Segregation in Violation of Due Process

Turning to Claim Two, which only concerns Henderson Defendants, Sexton alleges she was placed in punitive segregation without due process in violation of the Fourteenth Amendment.

#### a. Legal Standard

A pretrial detainee's right to be free from punishment is grounded in the Due Process Clause. See Pierce, 526 F.3d at 1205. A pretrial detainee may not be subjected to disciplinary segregation without a due process hearing. Mitchell, 75 F.3d at 524.

#### b. Discussion

Henderson Defendants argue for dismissal of Claim Two on three bases. First, they argue that the claim is conclusory in nature. But as held *supra*, the Court finds Sexton adequately alleged that Henderson Defendants placed Sexton in punitive segregation in violation of due process.

Second, Henderson Defendants argue the segregation could not be punitive since Sexton concedes she did not engage in any conduct warranting discipline. This argument is circular and specious. Plaintiff is essentially alleging that she was punished without cause; by definition, she would not have engaged in conduct that created a basis for her punitive segregation. The Court therefore rejects this argument.

Third, Henderson Defendants argue Sexton's segregation was reasonably related to a legitimate governmental objective: managing HDC resources and maintaining its security. But Sexton alleges a punitive purpose for her confinement. At this stage, the Court must liberally

construe Sexton's *pro se* Amended Complaint and accept her well-pleaded allegations as true. The Court therefore denies Henderson Defendants' motion as to Claim Two.

### iii. Claim Three: Inadequate Medical Care

In Claim Three and Claim Four, Sexton alleges Henderson Defendants and Las Vegas Defendants failed to provide adequate medical care in violation of due process.

#### a. Legal Standard

A pretrial detainee's claims regarding inadequate medical care fall under the Fourteenth Amendment's Due Process Clause, which imposes an objective deliberate indifference standard. Gordon, 888 F.3d at 1125. Such a claim requires four elements: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." Id. The third element requires the court to consider if the defendant's conduct is "objectively unreasonable." Id. The inquiry is case specific, turning on the particularities of the facts and circumstances in a case. Id. A plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." Id.

In Claim Three, Sexton alleges Henderson Defendants and Las Vegas Defendants (1) refused to provide her with adequate pain medication or medical treatment, (2) denied her treatment for her drug and nicotine withdrawals, (3) withheld her prescription glasses. Both sets of Defendants move to dismiss the claim.

#### b. Henderson Defendants - Discussion

Henderson Defendants move to dismiss Claim Three, arguing the restriction of certain medications serves the legitimate government objective of maintaining safety in the detention center. 1063 (9th Cir. 2014). Henderson Defendants also argue that Adams and Niswonger cannot be held liable for the alleged conduct because Sexton did not allege that either Defendant has medical responsibilities in their positions. Finally, Henderson Defendants argue for the dismissal

of Claim Three because Sexton did not allege that she experienced further injury from Henderson Defendants' conduct and the use of non-narcotic pain does not justify an inadequate medical care claim.

The Court finds that Sexton has sufficiently alleged a claim for inadequate medical care under the Fourteenth Amendment as a pretrial detainee. First, she alleges defendants made intentional decisions to withhold her prescription pain medications and prescription glasses as well as denying her treatment for drug and nicotine withdrawals. She also alleges the decisions caused her to suffer further from her then-existing fractured spine, head trauma, headaches, and mental illnesses, *e.g.* PTSD. Sexton alleges that she suffered from chronic, excruciating pain due to the denial of effective pain medication as well as the withholding of her prescription glasses despite Defendants knowing she was experiencing agonizing headaches. Sexton alleges that Defendants chose to withhold her prescriptions and treatment based on a blanket policy, meaning Defendants did not consider the particularities of the circumstances or needs for Sexton. See Colwell v. Bannister, 763 F.3d 1060 (9th Cir. 2014) (holding that a blanket, categorical denial of medically indicated treatment violated a prisoner's constitutional rights in the in the context of a claim for deliberate indifference of a serious medical need). Thus, Sexton has adequately pleaded an inadequate medical claim under the Fourteenth Amendment.

### *c. Las Vegas Defendants – Discussion*

Las Vegas Defendants also move to dismiss Claim Three, arguing that the "no-narcotic" policy does not deprive Sexton of any constitutional right because inmates are not entitled to their choice of medicine. Las Vegas Defendants also argue Sexton received some medical care.

The Court denies Las Vegas Defendants' motion to dismiss Claim Three based on the same considerations given to Henderson Defendants' motion to dismiss above. Specifically, under Colwell, the blanket policy of excluding certain pain medication or prescription glasses may be unconstitutional if the policy results in requiring pretrial detainees to go without the proper medical care. The Court therefore denies Las Vegas Defendants' motion as to Claim Three.

### *iv. Claim Four: Inadequate Medical Care*

Sexton asserts a second claim for inadequate medical care based on Defendants repeatedly

assigning her an upper bunk. Henderson Defendants argue the screening order allowed the claim to proceed against them despite Sexton alleging the claim against only Las Vegas Defendants. Sexton concedes she did not intend to assert the claim against Henderson Defendants. The Court therefore dismisses Henderson Defendants from Claim Four. Las Vegas Defendants do not argue for the dismissal of Claim Four. The claim will therefore proceed against Lombardo and LVMPD.

### *v.* *Claim Five: Housing Policy in Violation of Due Process*

In Claim Five, Sexton alleges that Las Vegas Defendants violated due process under the Fourteenth Amendment based on a policy of housing critically-injured inmates alleging improper treatment in a hard cell. Las Vegas Defendants argue the claim fails the plausibility standard of FRCP 12(b)(6). But Defendants' argument ignores the history of this matter. Sexton originally filed her claims in a related matter before the Court. White v. County of Clark Nevada, 2:16-cv-00734-RFB-VCF (D. Nev. Filed April 1, 2016). Plaintiffs in both matters allege that they were subjected to a policy or practice to house critically-injured detainees in hard cells. When the Court takes judicial notice of her earlier filings and the related case before the Court, the claim "contain[s] sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." AE ex rel. Hernandez, 666 F.3d at 637 (quoting Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011)). Thus, the Court denies Las Vegas Defendants' Motion to Dismiss as it relates to Claim Five.

### *vi.* *Claim Six: Excessive Force*

Claim Six involves a claim for excessive force in violation of the Fourth Amendment against Las Vegas Defendants.

#### *a. Legal Standard*

The Fourth Amendment prohibits the use of excessive force in the context of an arrest. Graham v. Connor, 490 U.S. 386, 388 (1989). A Fourth Amendment claim of excessive force is analyzed an objective reasonableness standard set forth in Graham. Davis v. City of Las Vegas, 478 F.3d 1048, 1053–54 (9th Cir. 2007).

#### *b. Discussion*

Sexton asserts Claim Six against Las Vegas Defendants, alleging Yannis used excessive

- 13 -

force when he slammed her into the ground and jumped on top of her despite her complete compliance during the arrest. She alleges Yannis acted in accordance with a policy allowing the use of excessive force during arrests—a policy that was ratified by Lombardo and LVMPD.

Las Vegas Defendants move to dismiss the claim as it relates to Lombardo and LVMPD, arguing that no objective facts have been alleged to support municipal liability. The Court agrees. Unlike Sexton's other claims based on alleged policy, the general allegation of excessive force used in a single incident does not suffice to state a claim alleging a policy approving of excessive force. Further, no complimentary claims of excessive force are pending in <u>White v. County of Clark Nevada</u>, 2:16-cv-00734-RFB-VCF (D. Nev. Filed April 1, 2016). Thus, there are no available allegations in <u>White</u> to support Sexton's claim of a policy for excessive force in this matter. The Court grants Las Vegas Defendants' Motion to Dismiss as it relates to Claim Six. The Claim will therefore proceed against Yannis only.

### vii. Claim Seven: ADA and RA

In her final claim, Sexton alleges an ADA and RA violation against Las Vegas Defendants and HPD. As discussed *supra*, the Court substitutes COHN for HPD.

#### a. Legal Standard

"There is no significant difference in analysis of the rights and obligations created by the ADA and the RA." <u>Zurkle v. Regents of Univ. of California</u>, 166 F.3d 1041, 1045, fn. 11 (9th Cir. 1999). Courts therefore "[apply] the same analysis to claims brought under both statutes[.]" <u>Id.</u> Both the ADA and the RA prohibit discrimination against individuals with disabilities on the basis of the disabilities. <u>Updike v. Multnomah Cty.</u>, 870 F.3d 939, 949 (9th Cir. 2017) (outlining the elements for an ADA claim and an. RA claim). "A public entity may not disregard the plight and distress of a disabled individual." <u>Id.</u> at 951. "The failure to provide reasonable accommodation can constitute discrimination" under the ADA and the RA." <u>Id.</u> (internal quotations omitted).

#### b. Discussion

Las Vegas Defendants move to dismiss Claim Seven, arguing the ADA and the RA were satisfied when Sexton received a medical evaluation and Ibuprofen. But the ADA and the RA may require more. Although Defendants medically evaluated Sexton and provided Ibuprofen for her

pain, the ADA and the RA may be violated if the Las Vegas Defendants failed to accommodate Sexton's alleged disabilities. Plaintiff has sufficiently alleged that the Defendants did not provide her the treatment medically necessary for her specified and known medical disabilities. The Court denies Las Vegas Defendants' motion to dismiss as to Claim Seven accordingly.

### C. CONCLUSION

**IT IS ORDERED** that Plaintiff Amanda Lea Sexton's Motion to Add Assisting Inmate to Transaction List (ECF No. 46) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff Amanda Lea Sexton's Motion for an Order Allowing Correspondence Between Plaintiff and Toney White (ECF No. 47) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff Amanda Lea Sexton's Motion to Extend Time to Defendants' Motion to Dismiss (ECF No. 70) is **GRANTED** *nunc pro tunc*.

**IT IS FURTHER ORDERED** that Henderson Defendants Chavez, Robinson, Adams, Niswonger, and City of Henderson Police Department's Motion to Dismiss (ECF No. 62) is **GRANTED in part** and **DENIED in part.**

**IT IS FURTHER ORDERED** that Las Vegas Defendants Lombardo, Cadet, Yannis, and Las Vegas Metropolitan Police Department's Motion to Dismiss (ECF No. 64) is **GRANTED in part** and **DENIED in part.**

The Court dismisses Henderson Police Department, substituting City of Henderson into Claim Three and Claim Seven. As to Claim One, the Court dismisses the First Amendment inmate mail claim but allows the First Amendment retaliation claim to proceed. The Court allows Claim Two and Claim Three to proceed. The Court dismisses Defendants Adams and Niswonger from Claim Four. The Court allows Claim Five to proceed. The Court dismisses Defendants Lombardo and Las Vegas Metropolitan Police Department from Claim Six. The Court allows Claim Seven to proceed.

/ / /

/ / /

DATED: September 19, 2018.

_____
**RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE**